IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:26CR26 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| MUNA ORRA, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through its counsel, David M. Toepfer, United States Attorney, and Erica D. Barnhill, Assistant United States Attorney, respectfully submits this memorandum setting forth the United States' position regarding the sentencing of Defendant Muna Orra.

## I.      FACTUAL BACKGROUND

Defendant was a physician licensed to practice medicine in Ohio since 2015.  (R. 22, Pre-Sentence Report ("PSR"), p. 7, ¶ 25).  While employed with a telemedicine company between February 2018 and September 2021, Defendant routinely signed prescriptions for durable medical equipment and genetic tests for patients without undertaking a good-faith review of the patient's medical history, without performing in-person assessments she averred performing, and without determining that the prescriptions she authorized were medically reasonable and necessary.  (R. 10, Plea Agreement, PageID 42).  Defendant submitted the completed prescriptions to the telemedicine company via an online portal; the telemedicine company subsequently billed Medicare for the prescriptions.  (R. 22, PSR, p. 4, ¶ 10).  Defendant's

prescriptions caused Medicare to pay approximately $997,641 ($993,452 for durable medical equipment and $64,189 for genetic testing) for medically unnecessary equipment and tests. (*Id.*, p. 5, ¶ 13-14).

## II.      SENTENCING GUIDELINES COMPUTATION

The parties' plea calculation in the plea agreement contemplates a total offense level of 20 before acceptance of responsibility, including a two-level upward adjustment for use of a special skill (R. 10, Plea Agreement, PageID 35) and a two-level downward adjustment for her minor role in the offense (*Id.*); the Pre-Sentence Report concurs with that calculation.  (R. 22, PSR, p. 7, ¶ 25).  Defendant has a criminal history category of I with zero criminal history points.  (*Id.*, p. 8, ¶ 33-34).  After applying a three-level reduction for acceptance of responsibility and a two-level zero-point offender reduction, the PSR calculates Defendant's final offense level at 15.  (*Id.*, p. 8, ¶ 29).  The resulting recommended Guidelines range is 18-24 months.

## III.     APPLICATION OF § 3553(A) FACTORS

Without doctors willing to sign prescriptions on behalf of patients they have never seen using charts they have never substantively reviewed, durable medical equipment and genetic testing scams would go nowhere.  Defendant had a duty as a prescribing physician to exercise a gatekeeping function, and yet she repeatedly ignored that duty to sign prescriptions without first determining that they were medically reasonable and necessary.  Defendant's criminal conduct in this case caused significant harm: Medicare paid nearly a million dollars for medically unnecessary prescriptions she signed. (*Id.*, p. 5, ¶ 13-14).

At the same time, despite Defendant's participation being absolutely essential to the success of the scheme, Defendant was neither the architect nor substantial beneficiary of the fraudulent payments; her personal financial benefit was limited to a flat rate paid to her by the

2

telemedicine company for her prescription "reviews," which totaled approximately $47,775.[1] (*Id.*, p. 5, ¶ 12).

This case therefore presents a somewhat unusual circumstance: the losses Defendant is responsible for causing under the Guidelines vastly outstrip the financial benefit she received. The Guidelines and the plea agreement account for this duality with the application of both a two-level upward adjustment for Defendant's use of a special skill – her prescribing ability as a doctor – and a two-level downward adjustment for her minor role in the scheme.  (*Id.*, p. 7, ¶ 22-23).  As the Guidelines account for both factors, a sentence within the 18 to 24 month Guidelines range may be appropriate; however, the government also recognizes that although Defendant's financial gain of $47,775 is a substantial amount of money in absolute terms, it represents less than 5% of the total loss caused by her conduct, and therefore a downward variance may be warranted under 18 U.S.C. § 3553(a)(1).  The PSR likewise recognizes that a variance may be warranted based on the nature and circumstances of the offense, among other factors.  (*Id.*, p. 17, ¶ 81).  The government defers to this Court's judgment as to whether, and to what extent, such a downward variance is appropriate.

## IV.    <u>RESTITUTION</u>

As part of her plea agreement, Defendant agreed to make full restitution pursuant to 18 U.S.C. § 3663(A)(3) and § 3663A for the losses caused by Defendant's relevant conduct in this case as defined under Guideline § 1B1.3. (R. 10: Plea Agreement, PageID 43, ¶ 50).  Because Defendant's signature on fraudulent prescriptions enabled the telemedicine company to fraudulently induce Medicare to pay $997,641, that loss is within the scope of Defendant's jointly undertaken criminal activity, in furtherance of the criminal activity, and reasonably

---

[1] Defendant had no role in the billing to Medicare, nor did she directly benefit from the Medicare payments.

foreseeable in connection with that criminal activity.  U.S.S.G. § 1B1.3(A)(1)(B)(i)-(iii).

Defendant is therefore responsible for the full amount of loss, despite the fact that her personal

gain was limited to $47,775.  The United States therefore requests that Defendant be ordered to

pay restitution of $997,641 to Medicare for the losses resulting from her criminal conduct.

Given the sizeable amount of restitution and Defendant's comparatively small financial benefit

from the crime, the United States asks that this Court not impose a fine.

## V.      CONCLUSION

Defendant played a small but crucial role in a larger scheme that defrauded Medicare of

$997,641; without Defendant's willingness to abdicate her responsibility as a physician to

determine medical necessity before authorizing prescriptions, the larger scheme could not have

succeeded.  If this Court is inclined to sentence Defendant within the Guidelines range, the

United States submits that a sentence at the low end of the range is appropriate.  However, as

discussed above the 18 U.S.C. § 3553(a) factors may warrant a variance from the advisory

Guidelines range; in that case, the United States defers to this Court as to whether and to what

extent such a variance is appropriate.

Respectfully submitted,

DAVID M. TOEPFER
United States Attorney

By:    /s/ Erica D. Barnhill
Erica D. Barnhill (OH: 0079309)
Assistant United States Attorney
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3967
(216) 522-2403 (facsimile)
Erica.Barnhill@usdoj.gov